UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

MASSACHUSETTS BAY INSURANCE    )
COMPANY, and CITIZENS INSURANCE   )
COMPANY OF AMERICA,                )
                                    )
            Plaintiffs,      )
                                    )
v.                                 )     Civil Action No. 1:17-cv-4366
                                    )
ENDLESS SUCCESS FOUNDATION, INC.  )
and DH REALTY, LLC,            )
                                    )
            Defendants.    )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs, Massachusetts Bay Insurance Company ("Massachusetts Bay") and Citizens Insurance Company of America ("Citizens"), by counsel, Cantrell Strenski & Mehringer, LLP, for their Complaint for Declaratory Judgment against Defendants, Endless Success Foundation, Inc. ("Endless Success") and DH Realty, LLC ("DH Realty"), state as follows:

### JURISDICTION AND VENUE

1.     This is a civil action for declaratory and other relief brought pursuant to the provisions of 28 U.S.C. §2201 and Rule 57 of the Federal Rules of Civil Procedure for the determination of a controversy between Plaintiffs and Defendants, arising out of insurance contracts.

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because this action involves citizens of different states and the amount in controversy, without interest and costs, exceeds the value specified by 28 U.S.C. § 1332 ($75,000).

3.      Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because the Court has personal jurisdiction over Defendants Endless Success and DH Realty, whose principal places of business are located at 10 West Market Street, Suite 1990, Indianapolis, Indiana, located in this district, and a substantial part of the events, namely the incident triggering this insurance claim, occurred in this judicial district.

## PARTIES

4.      Massachusetts Bay is an insurance company incorporated under the laws of the State of New Hampshire and has its principal place of business in Worcester, Massachusetts.   Thus, pursuant to 28 U.S.C. § 1332(c)(1), Massachusetts Bay is a citizen of a State other than Indiana

5.      Citizens is an insurance company incorporated under the laws of Michigan and has its principal place of business in Worcester, Massachusetts.  Thus, pursuant to 28 U.S.C. § 1332(c)(1), Citizens is a citizen of a State other than Indiana.

6.      Defendant Endless Success Foundation, Inc. is a domestic nonprofit corporation incorporated under the laws of the State of Indiana with its principal place of business located at 10 West Market Street, Suite 1990, Indianapolis, Indiana, 46204.  Thus, Endless Success is a citizen of the State of Indiana.

7.      Defendant DH Realty, LLC is a domestic limited liability company organized under the laws of the State of Indiana with its principal place of business located at 10 West Market Street, Suite 1990, Indianapolis, Indiana, 46204.  The Members of DH Realty are Christel DeHaan, who is a citizen of Indiana, and Mark R. Willis, who is a citizen of Indiana.

<u>**BACKGROUND**</u>

8.      Massachusetts Bay issued a Commercial Lines Primary Policy number ZDW A241787 00 to CD Enterprises, Ltd., under which DH Realty was an additional named insured, with policy effective dates of March 10, 2014 through March 10, 2015.  A true and accurate copy of the March 10, 2014 – March 10, 2015 Policy is attached as <u>Exhibit 1</u>.

9.      Massachusetts Bay issued a Commercial Lines Primary Policy number ZDW A241787 01 to CD Enterprises, Ltd., under which DH Realty was an additional named insured, with policy effective dates of March 10, 2015 through March 10, 2016.  Endless Success was added as an additional named insured under this Policy by endorsement dated April 1, 2015. A true and accurate copy of the March 10, 2015 – March 10, 2016 Policy is attached as <u>Exhibit 2</u>.

10.     Massachusetts Bay issued a Commercial Lines Primary Policy number ZDW A241787 02 to CD Enterprises, Ltd., under which DH Realty and Endless Success were additional named insureds, with policy effective dates of March 10, 2016 through March 10, 2017.  A true and accurate copy of the March 10, 2016 – March 10, 2017 Policy is attached as <u>Exhibit 3</u>.

11.     Massachusetts Bay issued a Commercial Lines Primary Policy number ZDW A241787 03 to CD Enterprises, Ltd., under which DH Realty and Endless Success are additional named insureds, with policy effective dates of March 10, 2017 through March 10, 2018.  A true and accurate copy of the March 10, 2017 – March 10, 2018 Policy is attached as <u>Exhibit 4</u>.   Exhibits 1-4 are collectively referred to herein as Primary Policies.

12.     Citizens issued a Commercial Umbrella Policy number U7W A241789 00 to CD Enterprises, Ltd., under which DH Realty was a named insured, with policy effective dates of March 10, 2014 through March 10, 2015.  A true and accurate copy of the March 10, 2014 – March 10, 2015 Policy is attached as <u>Exhibit 5</u>.

13.     Citizens issued a Commercial Umbrella Policy number U7W A241789 01 to CD Enterprises, Ltd., under which DH Realty was a named insured, with policy effective dates of March 10, 2015 through March 10, 2016.  Endless Success was added as an additional named insured under this Policy by endorsement effective March 10, 2015.  A true and accurate copy of the March 10, 2015 – March 10, 2016 Policy is attached as <u>Exhibit 6</u>.  Exhibits 5 and 6 are collectively referred to herein as Umbrella Policies.

14.     Citizens issued a Commercial Follow Form Excess and Umbrella Policy number U7W A241789 02 to CD Enterprises, Ltd., under which DH Realty Endless Success were additional named insureds, with policy effective dates of March 10, 2016 through March 10, 2017.  A true and accurate copy of the March 10, 2016 – March 10, 2017 Policy is attached as <u>Exhibit 7</u>.

15.     Citizens issued a Commercial Follow Form Excess and Umbrella Policy number U7W A241789 03 to CD Enterprises, Ltd., under which DH Realty and Endless Success are additional named insureds, with policy effective dates of March 10, 2017 through March 10, 2018.  A true and accurate copy of the March 10, 2017 – March 10, 2018 Policy is attached as <u>Exhibit 8</u>.  Exhibits 7-8 are collectively referred to herein as "Excess Policies."

16.     On August 21, 2017, John D. Hensley filed a lawsuit against Endless Success Foundation, Inc. and DH Realty, LLC in Marion County, Indiana Superior

Court No. 1 under Cause No. 49D01-1708-CT-032127 ("the Underlying Lawsuit"). A true and accurate copy of the Complaint and exhibits to the Complaint in the Underlying Lawsuit are attached as Exhibit 9.

17.     On August 28, 2017, Brent W. Huber, counsel for Defendants, sent a letter to Gregory & Appel Insurance, Inc., Defendants' insurance agent, enclosing a copy of the Underlying Lawsuit and asking that Gregory & Appel notify all general liability insurers for the 2011-2015 time period and request that those insurers defend and indemnify Defendants in the Underlying Lawsuit.

18.     On August 31, 2017, Gregory & Appel provided notice to Massachusetts Bay of the Underlying Lawsuit and the letter from Brent W. Huber. The communication from Gregory & Appel was the first notice received by Massachusetts Bay and Citizens of the allegations by Hensley that he suffered bodily injury as a result of the exposure to mold at the Premises.

19.     By March 16, 2015, if not before, Defendants knew about the claim by John Hensley that he suffered bodily injury from exposure to mold in the Premises.

20.     The Complaint in the Underlying Lawsuit alleges that John Henlsey owned Hensley Legal Group, which leased office space at 350 E. New York, Indianapolis ("Premises"), from DH Realty from November 2010 to January 2015 and from Endless Success from January 2015 until November 30, 2015.  Hensley's Complaint, alleging Negligence and/or Gross Negligence in Count I and Fraud in Count II, arises out of the presence of "harmful and/or toxic mold" at the Premises.

21.     In his Complaint, Hensley alleged that beginning in 2012, he noted foul smells, water intrusion from the ceiling, and water accumulation on the Property's window sills, which he reported to the Defendants through their

representatives.   Despite repeated complaints regarding foul smells and water intrusion at the Property, Hensley alleges the Defendants failed to investigate and remedy his concerns about air quality and that he began to experience adverse health problems during the time he was working within the Premises.   Hensley alleges that August Mack Environmental, Inc. was employed to conduct an investigation of his concerns about the Premises and that August Mack removed portions of the walls within the property for inspection.   He alleges that on September 2, 2015, Endless Success informed him that August Mack discovered the presence of harmful mold at the Premises.

22.   In Count I of the Complaint in the Underlying Lawsuit, based upon the theories of Negligence and Gross Negligence, Hensley alleges that Defendants owed various duties to him with regard to the condition of the property, that harmful and/or toxic mold was present at the property, that as a direct and proximate result of the negligence and gross negligence of the Defendants he was exposed to harmful or toxic mold, and that as a direct and proximate result of his exposure to harmful and/or toxic mold, he suffered adverse health effects both now and in the past that may be permanent and was harmed and suffered losses.   He also requests punitive damages in Count I of his Complaint.

23.   In Count II of his Complaint in the Underlying Lawsuit, based upon a theory of Fraud, Hensley alleges that Defendants' agents and/or representatives made false statements to him knowing them to be false, upon which he relied to his detriment, remaining in the Premises during which time he suffered from increasing health problems later determined to be commonly associated with toxic or harmful mold exposure.   Hensley alleged that as a direct and proximate result of the false

statements, he was harmed and suffered losses that may be permanent.  He also alleged that the Defendants acted with actual or constructive malice in making the false statements and requested punitive damages against the Defendants.

24.     On September 7, 2017, Massachusetts Bay and Citizens acknowledged receipt of the notice and informed Defendants that they were investigating the claim presented to them pursuant to a reservation of rights.   They further requested additional information about the claim from counsel for Defendants.  A true and accurate copy of the September 7, 2017 letter of Donna Moore to Ice Miller is attached hereto as Exhibit 10.   On September 14, 2017, counsel for Defendants sent certain materials to Massachusetts Bay and Citizens, which Massachusetts Bay and Citizens reviewed.

25.     On November 22, 2017, Massachusetts Bay and Citizens sent a letter to counsel for Defendants informing them that Massachusetts Bay and Citizens were denying coverage for the Underlying Lawsuit.

26.     The claimed damages in the Underlying Lawsuit place the amount in controversy at $75,000 or more.

### THE POLICIES

27.     The Primary Policies' Insuring Agreement for bodily injury provides as follows:

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We

will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

    **(1)**  The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

    **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

**b.**  This insurance applies to "bodily injury" and "property damage" only if:

    **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

    **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under

Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1**. of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Exhibits 1 and 2 at pp. 1-2 of Form CG 00 01 12 07, and Exhibits 3 and 4 at p. 1 of Form CG 00 01 04 13.

28.   The Umbrella Policies contain the following Insuring Agreement for Coverage A:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**I.   Insuring Agreement**

**a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits

of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

**(1)**   The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

**(2)**   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.**   This insurance applies to "bodily injury" and "property damage" only if:

**(1)**   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**   The "bodily injury" or "property damage" occurs during the policy period;  and

**(3)**   Prior to the policy period, no insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**    "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

Exhibit 5 and 6 at pp. 1-2 of Form CU 00 01 12 07.

    29.    The Excess Policies contain the following Insuring Agreements:

**I. INSURING AGREEMENTS**
    **1. Coverage A – Follow Form Excess Liability Insuring Agreement**
    **a.** We will pay on behalf of the insured those sums in excess of the "underlying insurance" which the insured becomes legally obligated to pay as damages, provided:
    **(1)**    Such damages are covered by "underlying insurance";
    **(2)**    The event which triggers coverage on the "underlying insurance" takes place during the policy period of this insurance, and

    **(3)** The applicable Limit of Insurance of the "underlying insurance" is exhausted by payment of judgments, settlements, related costs or expenses for damages also covered under this policy. We will not pay if the Limit of Insurance of "underlying insurance" is exhausted by payment for damages to which this insurance does not also apply.

**b.** We will not pay damages that the "underlying insurance" does not pay for any reason other than exhaustion of limits of the "underlying insurance" by payment of judgments, settlements, related costs or expenses.

**c.** The terms and conditions of the "underlying insurance" in effect at the inception of this policy apply unless they are inconsistent with the terms and conditions of this policy.

**d.** The amount we will pay for damages is limited as described in section **VI. LIMITS OF INSURANCE**.

**e.** We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

**f.** This policy does not apply to any part of loss within the Limit of Insurance of "underlying insurance", or any related costs or expenses.

**g.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under section **II. DEFENSE AND SETTLEMENT** and section **V. SUPPLEMENTAL PAYMENTS**.

**2. Coverage B – Umbrella Liability Insuring Agreement**

  **a.** We will pay on behalf of the insured those sums in excess of the "retained limit" shown in the Declarations which the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", "personal injury" and "advertising injury" to which this coverage applies, provided:

    **(1)** The:

      **(a)** "Bodily injury" or "property damage" is caused by an "occurrence"; or

      **(b)** "Personal injury" and "advertising injury" is caused by an offense arising out of your business;

    Which took place within the coverage territory as described in section **IV. COVERAGE TERRITORY**;

Case 1:17-cv-04366-TWP-MJD   Document 1   Filed 11/22/17   Page 13 of 22 PageID #: 13

    **(2)**  The "bodily injury" or "property damage" occurs during the policy period, and the offense causing "personal injury" or "advertising injury" is first committed during our policy period; and

    **(3)**  Prior to the policy period, no insured and no "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, knew that the "bodily injury", "property damage", "personal injury" or "advertising injury" had occurred, in whole or in part. If such an insured or authorized "employee" knew, prior to the policy period, that the "bodily injury", "property damage", "personal injury" or "advertising injury" occurred, then any continuation, change or resumption of such "bodily injury", "property damage, "personal injury" or "advertising injury" during or after the policy period will be deemed to have been known prior to the policy period.

        However, "bodily injury", "property damage", "personal injury" or "advertising injury" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured or by any "employee" authorized by you to give or receive notice of an "occurrence", offense or claim, includes any continuation, change or resumption of that "bodily injury", "property damage", "personal injury" or "advertising injury" after the end of the policy period.

**b.** "Bodily injury", "property damage", "personal injury" or "advertising injury" will be deemed to have been known to have occurred at the earliest time when any insured, or any "employee" authorized by you to give or receive notice of an "occurrence", offense or claim:

    **(1)**  Reports all or any part of the "bodily injury", "property damage", "personal injury" or "advertising injury" to us or any other insurer;

    **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury", "property damage", "personal injury" or "advertising injury"; or

       **(3)** Becomes aware by any other means that "bodily injury", "property damage", "personal injury" or "advertising injury" has occurred or has begun to occur.

    **c.** **Coverage B — Umbrella Liability Insuring Agreement** does not apply to:

       **(1)** Any claim or "suit" which is covered by "underlying insurance" regardless of whether or not the "underlying insurance" is available or the limits have been exhausted;

       **(2)** Any claim or "suit" covered by **Coverage A — Follow Form Excess Liability Insurance** of this policy; or

       **(3)** Any costs or expenses related to loss as described by **c.(1)** or **c.(2)** above.

    **d.** The amount we will pay for damages is limited as described in section **VI. LIMITS OF INSURANCE.**

    **e.** We have no obligation under this insurance with respect to any claim or "suit" settled without our consent.

    **f.** No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under section **II. DEFENSE AND SETTLEMENT** and section **V. SUPPPLEMENTARY PAYMENTS.**

Exhibits 7 and 8, pp. 2-3 of Form 475-0001 12 14.

    30.    The Primary Policies and the Umbrella Policies include the following

Fungi or Bacteria Exclusion:

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY.**
**FUNGI OR BACTERIA EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.**    The following exclusion is added to Paragraph **2. Exclusions** of **Section I — Coverage A — Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

**a.** "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**b.** Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

\* \* \*

**C.** The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Exhibits 1-4, p. 1 of Form CG 21 67 12 04 and Exhibits 5-6, p. 1 of Form CU 21 27 12 04.

31. The Excess Policies include the following Fungi or Bacteria Liability Exclusion:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**EXCLUSION – FUNGI OR BACTERIA LIABILITY (COVERAGE A AND B)**

This endorsement modifies insurance provided under the following:

HANOVER COMMERCIAL FOLLOW FORM EXCESS AND UMBRELLA POLICY

The following is added to section **VII. EXCLUSIONS,** paragraph **1.** Applicable to Both **Coverage A — Follow Form Excess Liability** and **Coverage B — Umbrella Liability**:

This insurance does not apply to:

**Fungi or Bacteria**

Any liability or expense arising out of "fungi" or bacteria which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

**(1)** This exclusion also applies to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "fungi" or bacteria, by you or by any other person or entity.

**(2)** For the purposes of this exclusion, "fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by "fungi".

Exhibits 7-8, p. 1 of Form 475-0080 12 14.

32. The Primary and Umbrella Policies also include the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

\*   \*   \*

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Exhibits 1-2 at p. 2 of Form CG 00 01 12 07, Exhibits 3-4 at p. 2 of Form CG 00 01 04 13, and Exhibits 5-6 at p. 2 of Form CU 00 01 12 07.   An identically worded exclusion is contained in the Umbrella Liability portion of the Excess Policies. Exhibits 7-8 at p. 9 of Form 475-0001 12 14.

      33.    The Primary Policies contain the following conditions:

**SECTION IV — COMMERCIAL GENERAL LIABILITY CONDITIONS**

*   *   *

**2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    **a.**    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.   To the extent possible, notice should include:

        **(1)**    How, when and where the "occurrence" or offense took place;

        **(2)**    The names and addresses of any injured persons and witnesses; and

        **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

    **b.**    If a claim is made or "suit" is brought against any insured, you must:

        **(1)**    Immediately record the specifics of the claim or "suit" and the date received; and

        **(2)**    Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit as soon as practicable.

    **c.**    You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

Exhibits 1 and 2 at pp. 10-11 of Form CG 00 01 12 07, and Exhibits 3 and 4 at p. 11 of Form CG 00 01 04 13.  The Umbrella Policies and Excess Policies also contain substantially similar language.  Exhibits 5 and 6 at pp. 11-12 of Form CU 00 01 12 07 and Exhibits 7 and 8 at pp. 12-13 of Form 475-0001 12 14.

34.    The Primary Policies contain the following definitions:

**SECTION V - DEFINITIONS**

\*   \*   \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person.  This includes mental anguish, mental injury, shock, fright or death resulting from "bodily injury", sickness or disease.

\*   \*   \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or

"personal and advertising injury" to which this insurance applies are alleged. . . .

Exhibits 1 and 2 at pp. 2-3 of Form 421-0080 (01/03) and pp. 14-15 of Form CG 00 01 12 07, and Exhibits 3 and 4 at p. 3 of Form 421-2915 12 14 and pp. 15-16 of Form CG 00 01 04 13.  The Umbrella Policies and Excess Policies contain the same definitions of "occurrence" and "suit" and a substantially similar definition of "bodily injury."  Exhibits 5 and 6 at pp. 14-16 of Form CU 00 01 12 07 and Exhibits 7 and 8 at pp. 15-19 of Form 475-0001 12 14.

35.     The Umbrella Policies contain the following definitions:

**19.** "Retained limit" means the available limits of "underlying insurance scheduled in the Declarations or the "self-insured retention", whichever applies.

\* \* \*

**23.** "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

\* \* \*

**25.** "Underlying insurance" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

Exhibits 5-6, pp. 16-17 of Form CU 00 01 12 07.

36.     The Excess Policies contain the following definitions:

**19. "Retained Limit"** means the amount stated as such in the Declarations for which the insured is responsible with respect to each "occurrence" under **Coverage B — Umbrella Liability**.

\* \* \*

**22. "Underlying Insurance"** means the liability insurance coverage provided under policies shown in the Schedule of Underlying Insurance for the limits and policy periods indicated.  It includes any policies issued to replace those policies during the term of this insurance that provide:

**a.**   At least the same limits of liability or limits of insurance; and

**b.**   The same hazards insured against, except as modified by general program revisions or as agreed to by us in writing.

Exhibits 7-8, p. 19 of Form 475-0001 12 14.

37.    Other provisions, definitions and exclusions in the Primary Policies, Umbrella Policies, and/or Excess Policies may also apply.  As additional information is developed, Massachusetts Bay or Citizens may rely upon such other provisions in seeking a declaratory judgment concerning its coverage obligation.

### DECLARATORY JUDGMENT

38.    Massachusetts Bay and Citizens incorporate herein their allegations in paragraphs 1 through 37 as though set for forth herein.

39.    An actual controversy exists between the parties regarding the parties' rights and obligations under the insurance policies described herein and declaratory relief will help resolve the dispute.

40.    Neither Massachusetts Bay nor Citizens owes any duty to defend or indemnify Defendants against the claims asserted in Counts I and Counts II of the Complaint in the Underlying Lawsuit because such claims are barred by the Fungi or Bacteria Exclusion contained in the Primary Policies, Umbrella Policies and Excess Policies.

41.    Neither Massachusetts Bay nor Citizens owes any duty to defend or indemnify Defendants against the claims asserted in Count II of the Complaint in the Underlying Lawsuit because such claims do not constitute an "occurrence" as defined by the Primary Policies, Umbrella Policies and Excess Policies.

42.    Neither Massachusetts Bay nor Citizens owes any duty to defend or indemnify Defendants against the claims asserted in Count II of the Complaint in the Underlying Lawsuit because such claims are barred by the Expected or Intended Exclusion in the Primary Policies, Umbrella Policies and Excess Policies

43.    Neither Massachusetts Bay nor Citizens owe any duty to defend or indemnify the claims asserted in the Complaint in the Underlying Lawsuit under the Primary Policies and Excess Policies that were effective from March 10, 2016 to March 10, 2018 because the alleged bodily injury did not occur during those policy periods and because D.H. Realty and Endless Success knew that bodily injury had occurred or had begun to occur, in whole or in part, prior to those policy periods.

44.    Because the Primary Policies, Umbrella Policies and Excess Policies issued to Endless Success and/or DH Realty do not cover, or exclude coverage, for the claims asserted by John Hensley in the Underlying Lawsuit, Massachusetts Bay and Citizens seek a declaration that they have no duty to defend Endless Success and/or DH Realty in the Underlying Lawsuit and have no duty to indemnify Endless Success and/or DH Realty for any damages or other costs that John Hensley may be awarded against Endless Success and/or DH Realty in the Underlying Lawsuit.

WHEREFORE, Plaintiffs, Massachusetts Bay Insurance Company and Citizens Insurance Company, respectfully request that the Court issue a judgment determining and declaring as follows:

1.    The Primary Policies issued by Massachusetts Bay and the Umbrella and Excess Policies issued by Citizens to Endless Success and/or DH Realty do not provide coverage for any of the claims asserted by John Hensley in the Underlying Lawsuit.

2.    Massachusetts Bay and Citizens are not legally obligated to defend Endless Success and/or DH Realty against the claims in the Underlying Lawsuit.

3.    Massachusetts Bay and Citizens are not legally obligated to indemnify Endless Success and/or DH Realty for the claims in the Underlying Lawsuit.

4.     Massachusetts Bay and Citizens further pray for all other relief to which they may be entitled.


Dated:  November 22, 2017                    Respectfully submitted,


                                             _/s/ Katherine L. Shelby_____
                                             Katherine L. Shelby, Atty. No. 1592-49

                                             CANTRELL STRENSKI & MEHRINGER, LLP
                                             150 West Market Street, Suite 800
                                             Indianapolis, IN 46204
                                             Phone:  (317) 352-3500
                                             Fax: (317) 352-351
                                             Email: kshelby@csmlawfirm.com

                                             Attorney for Plaintiffs, Massachusetts Bay
                                             Insurance Company and Citizens Insurance
                                             Company of America